# THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF ARKANSAS
# WESTERN DIVISION

| | |
|---|---|
| MICHAEL BULL and <br> TAMMIE BULL <br><br> Plaintiffs, <br> v. <br><br> FREEDOM MORTGAGE <br> CORPORATION <br> AND LOANCARE, LLC <br><br> Defendants. | § § § § § § § § § § § § § § Action No.:4:17-cv-334-DPM |

## FREEDOM MORTGAGE CORPORATION'S
## MEMORANDUM IN SUPPORT OF
## SECOND MOTION FOR SUMMARY JUDGMENT

When this matter last came before this Court on Freedom Mortgage Corporation's ("Freedom") first summary judgment motion, this Court dismissed some of the claims brought by plaintiff Tammie Bull, individually and as special administrator of the Estate of Michael Bull ("Plaintiff") and observed that Plaintiff "probably lacks standing to challenge the mortgage's assignment—unless she can show some sort of injury." (Doc. # 48, p. 1). This Court further suggested that "[s]imple discovery—on payments, taxes, insurance, and chain of title—will resolve [] nagging ambiguities." (*Id*. pp. 1-2). Since that time, Plaintiff's deposition revealed that she has no valid basis for establishing that Freedom's actions caused damage

1

because she voluntarily defaulted on the loan and because Freedom otherwise complied with the terms of the note and mortgage.

## I. Background

### a. Factual background

Michael Bull executed a $164,932.00 note on October 25, 2012 made in favor of CBC National Bank ("CBC")[1] and secured by a recorded mortgage signed by Plaintiff encumbering real property located at 800 Burgandy Court, Jacksonville, Arkansas 72076 (the "Property").[2] CBC specially indorsed the note to Freedom, which in turn indorsed the note in blank.[3] The undersigned is in physical possession of the original promissory note on behalf of Freedom. Additionally, "Mortgage Electronic Registration Systems, Inc. as nominee for CBC National Bank …" ("MERS") executed an assignment of mortgage to Freedom on July 16, 2014.[4] Initially co-defendant Loancare, LLC ("Loancare") serviced the loan on behalf of Freedom, but on April 13, 2016 Freedom began handling loan servicing directly.[5]

Plaintiff began sending insufficient monthly loan payments of $1,020 in 2013 when the monthly payment amount was $1,693 on the apparent belief that she had

---

[1] A copy of the original note, which is in possession of the undersigned, is attached as **Exhibit A**.
[2] A copy of the recorded Mortgage is attached as **Exhibit 1**.
[3] **Exhibit A**.
[4] Assignment of Mortgage, attached as **Exhibit B**.
[5] Notice of Transfer, attached as **Exhibit C**. At all relevant times, Freedom was the owner of the loan. For simplicity, this motion makes no distinction between the actions of Freedom individually as opposed to actions taken on its behalf by the prior loan servicer, Loancare.

overpaid property taxes.[6] Yet the public records of Pulaski County show that taxes for Lots 9 & 10, which encompass the Property were always handled by the lender, not Plaintiff.[7] Plaintiff ceased payments altogether after September 2014.[8] The Property sustained minor damage on July 2, 2014. On December 17, 2014, at a time when $6,741.31 was due on the account,[9] Plaintiff requested that Freedom apply the $3,178.53 insurance check to outstanding loan payments.[10] In accordance with the mortgage, Freedom insisted that the insurance proceeds be used to repair the Property.[11] Thereafter, Freedom called Plaintiff five times and wrote five times asking for an update as to repairs on the Property.[12] Plaintiff refused to communicate with Freedom.[13] Plaintiff has never repaired the Property.[14]

Freedom recorded a notice of default on February 8, 2017.[15] The account is due for October 1, 2014 and has a past due balance of $240,769.62. It has a negative escrow balance of $24,692.34, an outstanding principal balance of $159,043.16,

---

[6] Payment History, attached as **Exhibit D**.
[7] Pulaski County Tax Records, attached as **Exhibit 2.** The records show payment by "Corelogic Real Estate Tax Service," which is Freedom's tax vendor. In the tax year prior to the origination of the loan, Pulaski County records show payment by BAC Tax Services Corporation, which was the tax vendor for the loan refinanced by the Freedom loan.
[8] Affidavit of Freedom, attached as **Exhibit 3**, ¶ 17.
[9] *Id.*, ¶¶ 19-20.
[10] *Id.*
[11] *Id.*, ¶ 21.
[12] *Id.*, ¶ 22; See also Insurance follow-up letters dated 8/19/16, 10/24/16, 1/23/17, 3/30/17, and 4/30/17 are collectively attached as **Exhibit E.**
[13] *Id.*
[14] Excerpts from the deposition of Tammie Bull, individually and as special administrator for the Estate of Michael Bull are attached here as **Exhibit 4**, p. 51.
[15] Notice of Default, attached as **Exhibit 5.**

accrued interest of $23,657.88, plus fees and costs equaling $33,376.24.[16] Plaintiff remains in possession of the Property.

### b. Procedural history

Plaintiff filed this action on April 20, 2017 in Pulaski County Circuit Court seeking an injunction against foreclosure and quiet title. (Doc # 2). In the Complaint, Plaintiff vaguely allege that Freedom "is not the owner of said note…" and that it lacks "standing to pursue th[e] foreclosure" (Doc. # 2, ¶¶ 1, 8). Plaintiff also contends that Freedom "held payments, [] refused to apply insurance proceeds, and billed Plaintiff [] for insurance that was not in effect." (*Id.*, ¶ 5). Freedom filed its first summary judgment motion on November 3, 2017. (Doc. # 28). Freedom also counterclaimed for foreclosure. (Doc. # 28). Freedom took the deposition of Plaintiff on August 21, 2018.[17] Following completion of discovery, there remains no ambiguity about Plaintiff's alleged damages—she has none.

## II. STANDARD OF REVIEW

Federal Rule of Procedure 56 provides that summary judgment is proper if "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." FED. R. CIV. PROC. 56(c). If the moving party shows that there is no genuine issue of material fact, the burden shifts to the non-moving

---

[16] **Exhibit 3**, ¶ 14.
[17] **Exhibit 4.**

party to provide specific facts and affirmative evidence to show the existence of a genuine issue. *Celotex Corp. v. Catrett*, 477 U.S. 317, 321 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247-48 (1986).

### III. ARGUMENT

Plaintiff requests an injunction against foreclosure and advances one cause of action for quiet title. (Doc. # 2, ¶¶ 19-24). Freedom has an enforceable, recorded lien against the Property *in rem* and has the right to collect the debt, *in personam*. Plaintiff has not articulated a valid basis for cancellation of Freedom's recorded mortgage lien. Moreover, a quiet title action is an improper vehicle for invalidation of the debt or an award of damages. Regardless, discovery shows that Plaintiff's claims are without substantive merit.

**a. Freedom is entitled to enforce the note and its attendant security interest by reason of physical possession of a blank indorsed note evidencing a debt that Freedom both owns and services.**

Plaintiff alleges that Freedom lacks standing to enforce the note and its attendant mortgage because Freedom is not the real-party-in-interest. (Doc. # 2, ¶¶ 1, 3-4, 8-9, 11, 22). However, Freedom clearly has standing to foreclose on the Property because it is in physical possession of the original, blank indorsed note.[18] The note was specially indorsed to Freedom by the loan originator, CBC.[19] Freedom

---
[18] **Exhibit A.**
[19] *Id.*.

5

has indorsed the note in blank and provided the undersigned with the original note, which is available for presentation to this Court.[20] Freedom both owns and services Plaintiff's loan.[21]

Because the note is indorsed in blank, it is bearer paper. ARK. CODE ANN. §§ 4-3-109; 4-3-205(a). Freedom is a "holder" under Arkansas law, and is thus a "person entitled to enforce the instrument." *See* ARK. CODE ANN. §§ 4-1-201(b)(21), 4-3-301; *McKay v. Capital Res. Co.*, 327 Ark. 727, 940 S.W.2d 869, 870-71 (1997). Accordingly, Freedom is entitled to enforce the note and, along with it, the mortgage. *See, e.g.*, *Bryan v. Easton Tire Co.*, 262 Ark. 731, 561 S.W.2d 79 (1978); *In re Baber*, 523 B.R. 156, 159 (Bankr. E.D. Ark. 2014) (stating that the lender's possession of "the original note indorsed in blank would normally end any inquiry as to standing…."); *see also Anderson v. CitiMortgage, Inc.*, 2014 Ark. App. 683 450 S.W.3d 251, 253 (2014). The transfer of the note carries with it the security—*i.e.*, the mortgage lien. *Lehman* v. *First Nat'l. Bank*, 189 Ark. 604, 74 S.W. 2d 773 (1934); *Purcell* v. *Vincent*, 211 Ark. 486, 200 S.W.2d 970 (1947).

Freedom is entitled to enforce the note and mortgage as a matter of law without regard to Plaintiff's allegations about the formal assignment of the mortgage.

---

[20] **Exhibit 1,** ¶¶ 19, 8**.**
[21] *Id.*, ¶ 17; **Exhibit 3**, ¶¶ 6; 8.

6

### b. Plaintiff lacks standing to assert claims related to the assignment of mortgage because she is neither party nor third party beneficiary to those documents.

Plaintiff alleges, without support, that the assignment of mortgage was executed without proper authority. (Doc. # 2, ¶¶ 3). This Court need not even consider Plaintiff's allegations concerning the assignment of mortgage because Freedom is entitled to enforce the mortgage by reason of physical possession of the note. In any event, the law is clear that a borrower such as Plaintiff lacks standing to challenge the assignment of her mortgage because she is not party or third party beneficiary of the assignment. *See Brown v. Green Tree Serv. LLC*, 820 F.3d 371, 372 (8th Cir. 2016); *Quale v. Aurora Loan Servs.,* 561 F. App'x 582, 583 (8th Cir. 2014) (holding that the borrowers' lacked standing to challenge the assignment of mortgage and finding that "[t]he party injured by an improper or fraudulent assignment is the mortgagee-assignor (mortgage holder), not the mortgagor (homeowner)"); *Karnatcheva v. JPMorgan Chase Bank, N.A.,* 704 F.3d 545, 547 (8th Cir. 2013); *In re Baber*, 523 B.R. 156, 160 (E.D. Ark. 2014). Indeed, this Court recognized in its May 10, 2018 order that "[t]he weight of authority suggests that Bull probably lacks standing to challenge the mortgage's assignment—unless she can show some sort of injury." (Doc. # 48, p. 1).

Even if Plaintiff had standing to challenge the assignment of mortgage—

which she does not—she has no basis for questioning the validity of that document. In her deposition, Plaintiff clarified that she believed that Freedom was not entitled to enforce the note and mortgage is because "MERS had it."[22] And yet, Plaintiff was unable to point to any error in the assignment of mortgage from MERS:

> Q. . . . . Do you have any evidence that [the assignment of mortgage] wasn't signed by people with proper authority?
> A. I don't know.[23]

Thus, even assuming that Freedom did not have physical possession of the original note (which it does) and even assuming that Plaintiff had standing to challenge the validity of the assignment of mortgage (which she does not), she still unable to articulate any reason why the assignment is not valid.

### c. Plaintiff's allegations do not entitle her to the requested relief and she can show no damages because she admits that she defaulted on the loan.

Plaintiff did not invoke Arkansas' statutory quiet title procedure set out by ARK. CODE. § 18-60-501. (Doc. # 2, ¶ 6-7, 12). Necessarily then, Plaintiff's quiet

---

[22] **Exhibit 4**, p. 85; Unsurprisingly, Plaintiff could not explain the basis for her allegation that Freedom is not entitled to enforce the note and mortgage:
> Q. Your allegation is that Freedom Mortgage is not entitled to foreclose on your home, but can you explain to me, in your own words, why that is the case?
> A. Because they don't own the mortgage. They didn't own it.
> Q. And on what basis do you believe that they didn't own the Mortgage?
> A. Oh -- I forget how to say it. Because -- I guess, because we had received -- it's in one of our thinges, [sic], Complaints, I just can't remember how to word it.
> * * *
> A. I can't remember at this time. I'm sorry[22]
> * * *
> Q. Okay. But as we sit here right now, can you tell me what reason it is that Freedom doesn't own this loan?
> A. No. (*Id.* pp. 59-60).

[23] *Id.*, p. 73.

title action is based in equity. *Willcutt v. Houston*, 2014 Ark. App. 53, n.1, 2014 WL 247653 (2014) (discussing differences between statutory and equitable quiet title actions). Plaintiff's failure to state a basis for a declaratory judgment quieting title is fatal to her case. Plaintiff vaguely alleges that Freedom failed to properly allocate payments. (*Id.*, ¶ 5). Even if true, improper payment allocation would not serve as a basis for a declaratory judgment granting Plaintiff clear title.

Regardless, Plaintiff testified that she intentionally defaulted on the loan following a dispute about payment of taxes:

> Q. So at some point, your husband quit making that --
> A. The extra payments.
> Q. The tax portion payment to Freedom or to the lenders?
> A. Yes.
> Q. In what year do you believe he stopped making that portion of the payment?
> A. I believe, it was 2013.
>
> * * *
>
> Q. And after your husband stopped making the tax portion of the payment in 2013, did you ever resume making the tax portion of the payment?
> A. No.[24]

Plaintiff testified that she intentionally sent insufficient payments and then admitted that she suspended payments altogether:

> Q. Did you ever miss payments on this loan?
> A. We got behind, I believe, in 2014.
> Q. Okay. When was the last time you recall making a payment on the loan?
>
> * * *

---

[24] *Id.*, pp. 41-42.

9

    A.    . . . . January 2015.
    Q.    Okay. And so you haven't attempted any payments since January of 2015?
    A.    Uh-uh.[25]

As for her allegation that Freedom misapplied payments, Plaintiff clarified that this assertion is based upon Freedom's refusal to apply hazard insurance proceeds to payments instead of using those funds to repair the home.[26] Specifically, on July 2, 2014—when Plaintiff was already in default—her home incurred damage from a falling tree.[27] On December 17, 2014, Plaintiff sent the insurance proceeds of $3,178.53 to Freedom and asked that it be applied to past-due payments.[28] On that date, Plaintiff owed $6,741.31.[29] In accordance with the mortgage, Freedom insisted that hazard proceeds be used to repair the collateral rather than applying it to the account.[30] Specifically, the mortgage provides that "all or any part of [] insurance proceeds may be applied by Lender, at its option, . . (b) to the restoration or repair of the damaged Property."[31] Thus, Freedom acted within the terms of the governing contract by insisting that Plaintiff use the funds to repair the Property.[32] Thereafter, Freedom called and corresponded with Plaintiff asking that she confirm that the

---

[25] *Id.*, p. 66.
[26] *Id.***,** p. 51.
[27] **Exhibit 3**, ¶ 18; 20.
[28] *Id.*, ¶ 19.
[29] *Id.*
[30] *Id.*, ¶ 21
[31] **Exhibit 1**, § 4
[32] **Exhibit 4**, p. 51.

repairs to the Property were completed.[33] Plaintiff never responded.[34] The Property has never been repaired.[35]

Plaintiff can claim no damages from Freedom's insistence that hazard insurance proceeds be used for the repair of the collateral in accordance with the mortgage. This is particularly true because even if Freedom had applied those funds to past-due payments immediately upon receipt on December 17, 2014, the funds would have been insufficient to cure Plaintiff's default—$6,741.31 was due on that date leaving a shortage of $3,562.78 even if insurance funds had been applied.[36] Plaintiff has not submitted payment since that date.[37] Plaintiff's allegation that Freedom misapplied insurance proceeds is false and could not have caused her to sustain damage.

Similarly, Plaintiff's allegation that Freedom failed to record a notice of default (Doc. # 2, ¶ 6) is plainly contradicted by the public record, which shows a notice recorded on February 8, 2017.

Plaintiff also alleged that Freedom "falsely certified . . . each mortgagor. . . who applied for loan modification or forbearance assistance has been notified that [they] do[] not meet the criteria . . . under any program offered. . . ." (Doc. # 2, ¶ 7);

---

[33] **Exhibit E**; **Exhibit 3**, ¶¶ 21-22.
[34] **Exhibit 3**, ¶ 20.
[35] **Exhibit 4**, p. 51.
[36] **Exhibit 3**, ¶ 19.
[37] *Id.*

ARK. CODE 18-50-103. Yet in her deposition, Plaintiff admitted that she never applied for a loan modification.[38] Thus, this allegation is also demonstrably false.

Likewise, Plaintiff's allegation that she has "paid taxes on the property continuously from the present back through 2012" (Doc. # 2, p. 21) is demonstrably false because, in fact, Freedom made tax payments on both lots 9 and 10 through its tax payment vendor as reflected by the public records of Pulaski County.[39]

## IV. Conclusion

This Court should dismiss Plaintiff's Complaint because Freedom has clear standing to enforce the note and mortgage and because Plaintiff has not otherwise articulated a basis for damages. This Court should also enter a judgment of foreclosure in favor of Freedom.

/s/ *Blake B. Goodsell*
Blake B. Goodsell (Ark. Bar #2012226)
BRADLEY ARANT BOULT CUMMINGS LLP
1819 Fifth Avenue North
Birmingham, Alabama 35203
bgoodsell@bradley.com
Telephone: (205) 521-8000
Facsimile: (205) 521-8800
and
David Smith (pro hac vice pending)
BRADLEY ARANT BOULT CUMMINGS LLP
JP Morgan Chase Tower
600 Travis Street, Ste. 4800
Houston, Texas 77002
dsmith@bradley.com

---

[38] **Exhibit 4**, p. 69.
[39] **Exhibit 5.**

>Telephone: (346) 310-6200
>Facsimile:   (346) 310-6100
>
>*Attorneys for Defendant Freedom Mortgage Corporation*

## CERTIFICATE OF SERVICE

I hereby certify that on November 13, 2018, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

John Ogles
Ogles Law Firm, P.A.
200 S. Jeff Davis
P.O. Box 891
Jacksonville, Arkansas 72078
jogles@aol.com

Brien G. Saputo
Mackie Wolf Zientz & Mann, PC
124 W. Capitol Avenue, Ste. 1560
Little Rock, 72201
Telephone: (501) 429-4719
Facsimile: (501) 588-0070
bsaputo@mwzmlaw.com

>/s/ Blake B. Goodsell
>OF COUNSEL